THIS _7_ DAY OF _January_, 20_14_.
LEE ANN BENNETT, CLERK
UNITED STATES BANKRUPTCY COURT

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re

|  |  |  |
|---|---|---|
| Alfa General, LLC | ) | Case no.:  6:13-bk-15196-KSJ |
|  | ) |  |
| Taxpayer ID No. 59-3747651 | ) | Chapter 11 |
|  | ) |  |
| Debtor. | ) |  |
| _____ | ) |  |

**Debtor's Exhibit List**
**Hearing on Cash Collateral**
**Hearing Date: January 7, 2014 at 10:15 a.m.**

| Exh. # | Document Description | Date Identified | Date Admitted | With or Without Objection |
|---|---|---|---|---|
| 1 | Cash Collateral Budget through February 22, 2014 | | 1/7/14 | |
| 2 | Photograph of premises | | 1/7/14 | |
| 3 | Management Agreement with Dover International Realty, Inc. | | 1/7/14 | |
| 4 | Proposed cash collateral order | | 1/7/14 | |

**Exhibit Cover Sheet**

Party submitting: **Debtor**   **Ex. # 1**

Admitted: **Yes**   or   **No**  (circle one)

Debtor:  **Alfa General, LLC**

Case No.: **6:13-bk-15196-KSJ**

**Nature of Hearing/Docket No:  Hearing on Cash Collateral**

**United States Bankruptcy Court**
**Middle District of Florida**

Dated  *Jan 7* , 2014.

By: _____,   **Deputy Clerk**

Alfa General, LLC
Cash Collateral Budget through February 22, 2014

| | Week ending 12/21/13 | Week ending 12/28/13 | Week ending 01/04/14 | Week ending 01/11/14 | Week ending 01/18/14 | Week ending 01/25/14 | Week ending 02/01/14 | Week ending 02/08/14 | Week ending 02/15/14 | Week ending 02/22/14 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | |
| Rental Income | | | $15,783.82 | | | | | $15,783.82 | | |
| | | | | | | | | | | |
| **Expense** | | | | | | | | | | |
| Building R & M | | | $593.18 | $500.00 | | | $593.18 | $500.00 | | |
| Electricity | | | | $900.00 | | | | $1,000.00 | | |
| Elevator Maintenance | | | | $393.75 | | | | | | $393.75 |
| Elevator (telephone) | | | | $269.16 | | | | | $395.77 | |
| HVAC | | | | $319.00 | | | | | $319.00 | |
| Insurance | | | | | | $1,134.00 | | $605.00 | | $1,134.00 |
| Janitorial | | | $750.00 | | | | $750.00 | | | |
| Sales and Use Tax | $285.39 | $653.86 | | $939.25 | | | | | $939.25 | |
| Miscellaneous | | | | | | | | $113.68 | $102.24 | $229.50 |
| Pest Control | | | $138.45 | | | | | | | |
| Property Mgmt[2] | | | $789.15 | | | | $789.15 | | | |
| Water & Sewer | | | $1,046.49 | | | | | $1,046.49 | | |
| Professional Fees (Accounting)[1] | | | | $150.00 | | | | | $150.00 | |
| Utility Deposts | | | | | | | | $2,513.00 | | |
| | | | | | | | | | | |
| **Total Expenses** | $285.39 | $653.86 | $3,317.27 | $3,471.16 | $0.00 | $1,134.00 | $2,132.33 | $5,778.17 | $1,906.26 | $1,757.25 |

[1] subject to court approval

[2] insider

**Exhibit Cover Sheet**

Party submitting: Debtor    Ex. #2

Admitted: Yes   or    No  (circle one)

Debtor:  Alfa General, LLC

Case No.: 6:13-bk-15196-KSJ

Nature of Hearing/Docket No:  Hearing on Cash
Collateral

United States Bankruptcy Court
Middle District of Florida

Dated        Jan 7      , 2014.

By:   _____ ,   Deputy Clerk



## Exhibit Cover Sheet

Party submitting: Debtor    Ex. #3

Admitted: Yes   or    No  (circle one)

Debtor:  Alfa General, LLC

Case No.: 6:13-bk-15196-KSJ

Nature of Hearing/Docket No:  Hearing on Cash Collateral

United States Bankruptcy Court
Middle District of Florida

Dated _____ Jan 7 _____ , 2014.

By: _____  Deputy Clerk

MANAGEMENT AGREEMENT

AND

APPOINTMENT OF EXCLUSIVE AGENT FOR

LEASING OR SALE

BY AND BETWEEN

**Alfa General, LLC**

AS OWNER

AND

# DOVER INTERNATIONAL REALTY, INC.

# TABLE OF CONTENTS

ARTICLE I
      EXCLUSIVE AGENCY
ARTICLE II
      TERM OF AGREEMENT
            a) TERM
            b) BANKRUPTCY
            c) TERMINATION
ARTICLE III
      DUTIES AND AUTHORITY OF MANAGER AND OWNER
            a) COLLECTION OF RENT
            b) LEGAL PROCEEDING
            c) REPAIRS
            d) TENANT IMPROVEMENTS
            e) CONTRACTS WITH RELATED PARTIES
            f) COMPLIANCE WITH LAWS
            g) INSURANCE
            h) SERVICE CONTRACTS
            i) EMPLOYEES
            j) DISCHARGE OF EMPLOYEES/CONTRACTORS
            k) RENTAL OF PROPERTY
            l) NEGOTIATION OF LEASES
            m) ADVERTISING
            n) RENTAL RATES
            o) EXPENDITURES
            p) MONTHLY STATEMENTS AND REPORTS
            q) REIMBURSEMENT OF MANAGER
            r) SEPARATION OF OWNER'S MONIES
            s) BONDING EMPLOYEES
            t) GENERAL
            u) SPECIAL SERVICES
            v) INDEMNIFICATION
ARTICLE IV
      AUTHORITY
ARTICLE V
      COMPENSATION
ARTICLE VI
      MISCELLANEOUS
            a) BOOKS AND ACCOUNTS
            b) INDEPENDENT CONTRACTOR
            c) NOTICES
            d) ENTIRE UNDERSTANDING
            e) SUIT OR ACTION
            f) HEADING
            g) ASSIGNABILITY
            h) EXPENSE OF OWNER
SCHEDULE A

# MANAGEMENT AGREEMENT

**THIS** Agreement made as of this 15th day of January,2008, by and between **Alfa General, LLC** (hereinafter referred to as "Owner") and **DOVER INTERNATIONAL REALTY, INC.** (hereinafter referred to as "Manager")

**WITNESSETH:**

    In consideration of the mutual promises and covenants herein contained, Owner and Manager agree as follows:

## ARTICLE I

## EXCLUSIVE AGENCY

    Owner hereby appoints Manager as the sole and exclusive Leasing Agent and Manager of the Property described on Schedule "A" attached hereto (hereinafter referred to as the Property), and Manager hereby accepts such employment. Manager will act as Owner's agent and will diligently manage the property in accordance with the prevailing standards of competent property managers for management of comparable properties.

    Manager represents, and Owner acknowledges, that Manager is a licensed real estate broker within the State of Florida. Manager represents numerous properties in the same geographic area as the property which is the subject of this agreement and may undertake to represent others subsequent to the execution of this agreement. These other properties may compete directly or indirectly with the property described in Schedule A for tenants or purchasers. However, nothing herein shall prohibit Manager from representing those properties or from undertaking to represent additional properties, nor shall such representation be considered a conflict of interest. Owner specifically consents to Manager's representation of other properties and waives any claim that Owner might otherwise have that such representation conflicts with their duties and obligations undertaken by Manager pursuant to this agreement or by law.

## ARTICLE II

## TERM OF AGREEMENT

    a) **TERM:** The term of this Agreement shall commence January 15, 2008 and shall continue in increments of twelve (12) months thereafter until cancelled.

    b) **BANKRUPTCY:** In the event a petition of bankruptcy is filed by or against either Owner or Manager, or in the event that either shall make an assignment for the benefit of the creditors or take advantage of any insolvency act, then the other party hereto may forthwith terminate this Agreement without notice.

    c) **TERMINATION:** This agreement may be terminated at any time by either party for any cause shown, with sixty (60) days prior written notice, including material default in the provisions hereof, which is not cured within ten (10) days after notice thereof is given to the party in default. Either party may terminate this Agreement on the sale of the Property on the

date of sale with at least sixty (60) days prior written notice. In the event of the termination or expiration of this Agreement, Manager agrees to turn over to Owner or its designated representatives all documents, records, leases and contracts pertaining to the Property and such correspondence pertaining thereto (other than correspondence between Manager and its attorney where such attorney is acting on behalf of Manager rather that on behalf of Owner). Manager shall turn over to Owner all monies in its possession belonging to Owner less any amounts then due Manager.

## ARTICLE III

## DUTIES AND AUTHORITY OF MANAGER AND OWNER

a) **COLLECTION OF RENT:** Manager shall use its best efforts consistent with industry standards in the management of the Property and due diligence in collecting the rents and other income therefrom and will cooperate fully with any third party leasing agent(s) wishing to show prospective tenants the Property.

Manager shall be fully and absolutely responsible for the proper deposit and application of funds received in the form of rent, common area maintenance charges, etc. collected from tenants, or other funds provided by Owner. Manager shall not solicit or accept disclosed or undisclosed payments, "kickbacks" or benefits of any kind. All discounts or rebates obtained by Manager in connection with any purchase of utilities, supplies or equipment used or services rendered in the management of the Property shall be credited to Owner.

Nothing contained herein shall be construed that Manager shall have guaranteed the collection of any receivable or obligate the Manager for any receivables which are uncollected. At no time shall it be the responsibility of Manager to advance money for payment of any obligations of Owner when funds are not available.

b) **LEGAL PROCEEDING:** Manager may, in the name of and at the expense of Owner and with Owner's prior written approval, institute any and all legal actions or proceedings for the collection of rent or other income from the Property or the ousting or dispossessing of tenants or other persons therefrom, and such expenses may include the engaging of counsel for any such manner.

c) **REPAIRS:** Manager is authorized, in the name of and at the expense of Owner, to make or cause to be made such ordinary repairs or alterations to the premises as may be advisable or necessary, and to purchase such supplies as may be reasonably necessary for the operation of the property. The expense to be incurred for any one item or repair shall not exceed the sum of $15,000.00 unless authorized by the Owner, except under such circumstances as Manager shall reasonably deem to be an emergency. Manager shall allow to Owner any rebate or discount which Manager shall obtain. The execution of a lease by Manager or Owner shall be deemed Owner's approval of any work required of Owner under such lease, but Manager shall not enter any contract therefore or for any part thereof if the amount of such contract is in excess of $15,000.00.

d) **TENANT IMPROVEMENTS:** Manager shall administer all capital improvements to the Property including tenant finishes and major repairs.

e) **CONTRACTS WITH RELATED PARTIES:** Manager shall not enter into any contract on behalf of Owner with any party in which Manager or stockholder of Manager or members of their immediate family has a financial interest without first disclosing same to Owner.

f) **COMPLIANCE WITH LAWS:** If Owner shall fail or refuse after reasonable notice to comply with or abide by any rule, order, determination, ordinance or law of any Federal, State or Municipal Authority, Manager upon giving seven (7) days written notice to Owner may terminate this Agreement.

g) **INSURANCE:** Owner shall procure and maintain and provide evidence of coverage at all times during the term of this Agreement, such insurance and in such amounts as Owner sees fit as follows: personal liability (resulting only from a defect in the premises), fire, extended coverage and vandalism and malicious mischief insurance on all real and personal property at the Property, shall name **DOVER INTERNATIONAL REALTY, INC.** as an additional insured and shall provide Manager with evidence of such coverage.

Manager will carry and maintain, at its sole cost and expense during the term of this Agreement a comprehensive general liability policy including contractual liability endorsements of insurance covering liability for Manager's servants, employees and agents, in an amount and in forms acceptable to the Owner by insurance companies with general policy holder's rating of not less that XI and a financial rating of A+15 as rated in the most current available "Best's" Key Rating Guide or otherwise acceptable to Owner. Each and every such policy shall (i) be issued in the name of Manager, (ii) shall (or a certificate thereof shall) be delivered to Owner within ten (10) days from the date of this Agreement and thereafter within thirty (30) days prior to the expiration of each policy, and, as often as any such policy shall expire or terminate, renewal or provision that the insurer will give to Owner at least thirty (30) days notice in writing in advance of any cancellation, termination or lapse, or the effective date of any reduction, in the amounts, of insurance, and (iii) shall be written as the management company's primary policy which does not contribute to and is not in excess of coverage which Owner may carry.

h) **SERVICE CONTRACTS:** Manager is authorized, in the name of and at the expense of the Owner, to contract for electricity, gas, steam, telephone, window cleaning, vermin extermination, and other services or such of them as Manager shall deem advisable, but only after Owner's prior approval in each instance is obtained as to any contract for more than $15,000.00 per annum or any contract which is not terminable on thirty (30) days (or less) notice. Copies of all contracts entered into by Manager on behalf of Owner shall be delivered to Owner promptly after their execution. Manager is not and never shall be liable to any creditor of Owner or to any claimant against the Owner. Further, Owner is not and shall never be liable to any creditor of Manager or to any claim against the Manager, except those arising from contracts entered into on behalf of Owner, and Owner has knowledge and written approval of such contracts including any persons hired or contracted with by Manager in accordance with this agreement. Nothing contained in this Agreement shall constitute or be construed to be or create a partnership or joint venture between Owner and Manager. It is the intention of the parties that the only relationship hereunder is that of independent contractor and Owner.

(i) **EMPLOYEES:** All persons employed to work at the property shall be employees of Manager or a legal entity owned, controlled by or affiliated with Manager. Manager agrees to supervise the work of, and to hire and discharge building employees. Manager agrees to use reasonable care in the hiring of such employees. Manager will put building employees on its payroll and will not increase the number of such employees without prior written approval of Owner. Pay increases to building employees shall be at the discretion of the Manager. Manager shall make disbursements and deposits for all compensation and other amounts payable with respect to persons who are employed in the operation of the Property, including, but not limited to, unemployment insurance, social security, workmen's compensation, other charges imposed by a governmental authority, and employee benefits. Manager shall maintain complete payroll records. All payroll costs including, but not limited to, those enumerated herein, are operating expenses to be reimbursed to Manager from Owner's funds received by Manager.

(j) **DISCHARGE OF EMPLOYEES/CONTRACTORS:** Manager shall, in accordance with the approved budget, employ, discharge and pay, on behalf of Manager all servants, employees and contractors necessary to be employed in the management and operation of the Property. Manager shall discharge any servant, employee or contractor whose discharge is demanded in writing by Owner except that the Manager shall not be required to respect such demand if it is in violation of any written agreement or contract existing with respect to any such servant, employee or contractor. Notwithstanding anything herein to the contrary, none of such servants, employees or contractors shall have a contractual relationship with Owner regardless that Manager shall utilize Owner's funds in connection with the approved budget to pay the salaries, wages and other compensation due said persons.

(k) **RENTAL OF PROPERTY:** Manager shall use its best efforts to rent all space in the Property which is now vacant or may become vacant during the term of this Agreement. When appropriate, Manager shall engage the services of other real estate brokers to lease space in the Property who shall be paid from such commission as outlined on Schedule "A". Owner shall not engage the services of any other broker or agent during the term of this agreement and should Owner cause another broker or agent to become involved in any lease of the property, Owner shall have the responsibility for compensating said broker or agent separate from the compensation owed Manager outlined in Schedule A.

(l) **NEGOTIATION OF LEASES:** Owner shall refer all inquiries concerning the rental of space in the Property to Manager. All negotiations with prospective tenants shall be conducted by Manager or under its direction. Manager shall have the authority to execute on behalf of Owner any leases or rental agreements.

(m) **ADVERTISING:** In accordance with the approved budget and subject to the approval of Owner and at Owner's expense, Manager shall advertise such space as is available for rent and arrange for such signs, marketing plans, brochures and other forms of advertising as may appear advisable. Owner agrees to reimburse Manager for all out-of-pocket expenses, including, but not limited to, long distance telephone calls and, with Owner's prior approval, the cost of out-of-town travel.

(n) **RENTAL RATES:** Rental rates for space in the Property shall be established by Owner. Manager shall, promptly following the execution of the Agreement and from time to time thereafter, make recommendations to Owner with respect to rental rates.

(o) **EXPENDITURE:** All expenditures authorized by this Agreement and in accordance with the approved budget shall be considered operating expenses to be paid from Owner's funds received by Manager and shall include the compensation of Manager on the basis hereinafter provided. Manager shall, to the extent of available funds of Owner on hand, timely pay interest or amortization on mortgages, taxes, assessments, water charges and premiums on insurance and other expenses incurred maintaining and operating the Property. Manager shall promptly advise Owner of any insufficiency of funds on hand to pay operating expenses when they become due. If Owner instructs Manager to pay operating expenses in a certain order of priority, Manager shall do so. In the event disbursements shall be in excess of the rents collected, Owner agrees to pay such excess promptly on demand.

(p) **MONTHLY STATEMENTS AND REPORTS:** No later that the 15th day of each calendar month, Manager shall furnish to Owner a written report covering operations of the Property for the preceding calendar month. Such report shall show all collections, expenditures, delinquencies, uncollectible items, vacancies and such other pertinent matters relating to the management, operation and maintenance of the Property which Owner has requested Manager to report on monthly, the status of all pending legal proceedings instituted by Manager, and each repair and alteration, which was undertaken or contracted for by Manager. Manager shall furnish Owner with copies of all written complaints of tenants and report on any actions taken by Manager with respect to such complaints. Manager shall deliver to Owner accountant within twenty (20) days after the end of each calendar month an income & expense statement, delinquency list and checking account reconciliation showing the results of the operation of the Property for the immediately preceding calendar month. Such statements shall be taken from the books and records maintained by Manager.

(q) **REIMBURSEMENT OF MANAGER:** Owner shall reimburse Manager within twenty (20) days after notice for any monies which Manager may elect to advance for the account of Owner, provided, however that the monies so advanced are in respect to an item which Owner is obligated to pay under the provisions of this Agreement. Nothing herein contained, however, shall be construed to obligate Manager to make any such advances.

(r) **SEPARATION OF OWNER'S MONIES:** All monies received by Manager for or on behalf of Owner (less any sums properly deducted by manager pursuant to any of the provisions of this Agreement) shall be deposited in a separate account maintained in Owner's name by Manager with a bank for the deposit of monies of Owner and not mingled with funds of Manager or any other party.

At all times during the term of this Agreement, a minimum balance of $5,000.00 shall be maintained for the projects cash needs. Manager shall advise Owner immediately when funds on hand are insufficient to discharge current obligations or when Manager believes anticipated expenses will exceed available funds. Owner shall provide sufficient capital as may be necessary for the project to meet its monetary obligations within the time frame necessary to remain current with project creditors.

(s) **BONDING EMPLOYEES:** Manager shall procure at Owner's expense and deliver to Owner a fidelity bond naming Owner as obligee in which the obligor is responsible for the mishandling of any funds of Owner by Manager, its servants, employees and agents. The form of said bond as well as the company issuing same shall be acceptable to Owner.

(t) **GENERAL:** Manager shall reasonably monitor and observe the business activities of all tenants on the Property during normal business hours with regard to the tenants' compliance with their respective leases. Manager shall inform both tenants and Owner of any violations of the terms of any lease and shall use reasonable efforts to have tenants correct such violations. Manager shall notify Owner of any violation of law on the Property by any tenant that may come to Manager's attention and shall make recommendation to Owner about how to deal with such violation. However, Manager shall have no liability or responsibility for any damage to the Property or loss or liability of the Owner resulting from any intentional or unlawful activity of any tenant whether or not Manager had been aware of or reported such activity to Owner. Subject to Owner's direction and control, Manager shall handle public relations matters with respect to the Property involving tenants of the Property, governmental authority and/or the general public.

(u) **SPECIAL SERVICES:** If it becomes advisable or necessary to make extraordinary repairs or engage in extensive reconstruction or rehabilitation of the premises or any part thereof, or if Manager is called upon to perform extraordinary services, not customarily a part of the usual services performed by a managing agent, it is agreed by Owner that Manager shall receive an additional fee, (see attached Schedule "A").

(v) **INDEMNIFICATION:** Owner hereby indemnifies and agrees to hold harmless Manager regarding obligations, expenses (including reasonable attorney's fees), judgments, damages, claims and demands of any kind whatsoever arising out of any claim for any leasing commission, compensation, brokerage fee or other charge made against the indemnified part by any broker, agent, finder or any other party in connection with the management and/or leasing of the property insofar as such claim, costs, expense, or liability arising from any act or omission of the indemnified part, its agents, servants or employees.

## ARTICLE IV

## AUTHORITY

This agreement is intended to create a special agency limited by the powers and authorities herein specifically set forth and such other powers and authorities as may be granted by Owner from time to time in writing.

## ARTICLE V

## COMPENSATION

Owner agrees to pay Manager monthly the following compensation which has been negotiated between Owner and Manager:

(a) For Management: per the terms of Schedule "A"

(b) It is understood that the foregoing shall be in addition to reimbursements to Manager for any expenses incurred by Manager for Owner, pursuant to Article III.

(c) For Leasing: Manager shall be compensated at the commission schedule hereby attached as Schedule "A".

(d) For Sale: 6% gross of sale price

## ARTICLE VI

## MISCELLANEOUS

(a) **BOOKS AND ACCOUNTS:** Manager shall maintain adequate and separate books and records for the Property which shall reflect all income collected and expenditures made by Manager for Owner and supportive documentation reasonable sufficient to establish that all entries in such books and records are proper and accurate. Manager shall cooperate with Owner's accountant in connection with said accountant's preparation of Owner's financial statements.

(b) **INDEPENDENT CONTRACTOR:** It is expressly understood and agreed that Manager will act as an independent contractor in performance of this Agreement. No provision hereunder shall be intended to create a partnership or a joint venture with respect to the Property or otherwise.

(c) **NOTICES:** All notices, approvals, consents and reports required hereunder shall be in writing and shall be given to the Owner or the Manager, as the case may be, and may be delivered by hand, electronically, fax or sent by certified United States mail, at the address set forth below or at such other addresses as hereafter may be specified by a party on notice to the other.

**OWNER:**
ALFA GENERAL, LLC
**1307 S. International Parkway, Ste 1091**
**Lake Mary, FL 32746**

**MANAGER:**
**DOVER INTERNATIONAL REALTY, INC.**
**1307 S. International Parkway, Ste 1091**
**Lake Mary, FL 32746**

(d) **ENTIRE UNDERSTANDING:** This Agreement contains the entire understanding of the parties and it may not be changed or modified orally but only by written instrument signed by the parties hereto.

(e) **SUIT OR ACTION:** Manager shall initiate, settle or otherwise dispose of litigation with a third party relating to the Property. Nothing in this Agreement shall limit Manager's ability to defend, settle or otherwise dispose of litigation in its individual capacity, even if the litigation affects the rights of Owner or its interest in the Property. If suit or action is instituted in connection with any controversy arising out of this Agreement, the prevailing party shall be entitled to recover, in addition to costs, such sum as the court may adjudge reasonable as attorney's fees in such suit or action and on any appeal from any judgment or decree entered therein. The Agreement is to be construed and governed in accordance with the laws of the State of Florida.

(f) **HEADING:** Captions used herein are for convenience only are not a part hereof and shall not be used in construing this Agreement.

(g) **ASSIGNABILITY:** This Agreement and the rights hereunder shall not be assignable by Manager without the prior written consent of Owner. Subject to the preceding sentence, this Agreement shall inure to the benefit of and binding upon the respective parties, their successors and/or assigns.

(h) **EXPENSE OF OWNER:** Owner will reimburse independent contractor for all office supplies directly associated with the management of the Property, including, but not limited to, long distance telephone, fax, express mail, postage and general office supplies.

IN WITNESS WHEREOF the parties hereto have executed this Agreement the day and year first above written.

OWNER:

ALFA GENERAL, LLC

BY: _____

MANAGER:

DOVER INTERNATIONAL REALTY, INC.

BY: _____

## SCHEDULE A TO MANAGEMENT AGREEMENT

1) The Property covered by the management agreement is described as follows:

Property Address:    1673 Mason Ave. Daytona Beach, FL 32117
Halifax Forum

2) 5 percent (5%) of all rents, escalation rents and additional rent, common area maintenance expense reimbursements and any additional monies collected from all sources whatsoever, excluding however, security deposits to the extent not applied and collections for amortization of special improvements (over and above building standard improvements) financed for tenants by the Owner, refund of taxes, awards arising out of takings by eminent domain, discounts and dividends on insurance policies and proceeds from the sale, exchange, financing or refinancing of all or a portion of the Property, but in no event less than $650.00 per month.

The compensation for each month shall be paid on the first day of the next succeeding month.

3) Leasing Commission Policy: Owner shall compensate Manager for renting and leasing space in the Property, including expansion of space occupied by existing tenants, as follows:

| | |
|---|---|
| New Lease | Six Percent (6%) of the Gross Lease |
| Renewals | One Percent (3%) of the Gross Lease |

The leasing commission shall be deemed earned and payable upon execution of the lease.

Upon termination of this Agreement pursuant to the provisions of Article II, Paragraph C, Owner shall recognize Manager as the broker in any pending negotiations for lease of space in the Property. In the event of the consummation of the lease with a person with whom Manager was negotiating at the date of termination of this Agreement, Owner shall pay Manager a commission at the rate described above.

4) Severance Compensation (On Sale): Upon the sale of the Property by Owner, Manager will be compensated for the additional due diligence work required for the sale of the Property and in lieu of bonus for past efforts leading to the sale. This payment shall be an amount equal to the total management fees paid Manager for the three-month period prior to the sale. This severance compensation will be due and payable irrespective of any continuing employment arrangement Manager may enter into with a successor Owner, and is in addition to any other fee to which Manager may be entitled by reason of its efforts to procure the sale.

5) Portfolio Management: Manager will be compensated .5% for portfolio management each year based on the value of the asset. Upon termination of the agreement Owner shall pay Manager any amounts due and payable. Should the termination take place mid-year the portfolio management fee will be prorated to the date of termination.

6) Construction Supervision: Manager's compensation for construction supervision shall be 6% of the cost of tenant and/or capital improvements and shall be paid as the general contractor is paid. The payment of this fee is in addition to the minimum monthly fee set out in Paragraph 1 of this Schedule.

## Exhibit Cover Sheet

**Party
submitting: Debtor   Ex. #4**

**Admitted: Yes   or   No   (circle one)**

**Debtor:  Alfa General, LLC**

**Case No.: 6:13-bk-15196-KSJ**

**Nature of Hearing/Docket No:  Hearing on Cash
Collateral**

**United States Bankruptcy Court
Middle District of Florida**

**Dated** _Jan 7_ **, 2014.**

**By:** _____, **Deputy Clerk**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case no.:  6:13-bk-15196-KSJ |
| Alfa General, LLC | ) | Chapter 11 |
| | ) | |
| Taxpayer ID No. 59-3747651 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FIRST PRELIMINARY ORDER ON
## DEBTOR'S MOTION TO USE CASH COLLATERAL AND
## NOTICE OF CONTINUED HEARING ON _____, 2014 AT _____ .M.

This case came before the Court at a hearing on January 7, 2014, to consider and act upon the motion by debtor-in-possession to use cash collateral (Doc. No. 4). For the reasons stated and recorded in open Court, it is ORDERED that:

1.    <u>Cash Collateral Authorization</u>. Subject to the provisions of this order, Debtor is authorized to use cash collateral to pay: (a) amounts expressly authorized by this Court, including payments to the US Trustee for quarterly fees; (b) the expenses set forth in the budget attached hereto, plus an amount not to exceed 5% for each line item; and (c) such additional amounts as may be expressly approved in writing by First Southern Bank ("Secured Creditor"). This authorization will continue until further order of the Court. Except as authorized in this order, Debtor is prohibited from use of cash collateral.

2.    <u>Debtor Obligations</u>. Debtor shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

3.    <u>Access to Premises and Records</u>.  Upon reasonable notice, and provided that it does not unreasonably interfere with the business of Debtor, Debtor shall grant to Secured Creditor and its agents and representatives  access to Debtor's premises and records for inspection.

4.    <u>Replacement Lien</u>.  Each creditor with a security interest in cash collateral shall have a perfected post-petition lien against cash collateral to the same extent and with the same validity and priority as the prepetition lien, without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

5.    <u>Insurance</u>.  Debtor shall maintain insurance coverage for its property in accordance with the obligations under the loan and security documents with Secured Creditor.

6.    <u>Non-Waiver of Rights and Remedies.</u>  This Order is not intended to and shall not prejudice, alter, affect, or waive any rights and/or remedies of Debtor or Secured Creditor, with respect to liens, claims, value determinations, request for additional adequate protection, and all other matters under the Bankruptcy Code or applicable non-bankruptcy law, including but in no way limited to claims of Secured Creditors for administrative expense or superiority claims under code sections 503 and 507.

7.    <u>Creditor Committee.</u>  The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee or any rights of a duly appointed committee to challenge the validity, priority or extent of any lien(s) asserted against cash collateral.

8.    <u>Super-priority</u>.  If, notwithstanding the protections under this order, Secured Creditor has a claim allowable under subsection 507(a)(2) arising from the stay of actions against property under section 362 of the bankruptcy code, from the use of property under section 363,

2

then such creditor's claim under such subsection shall have priority over every other claim allowed under such subsection.

    9.    <u>Continued Hearing</u>.  An evidentiary hearing on the motion and any objection is continued to _____, 2014 at _____ ___.m.

    DONE and ORDERED in Orlando, Florida, on _____.

 

 

 

                    _____
                    KAREN S. JENNEMANN
                    Chief United States Bankruptcy Judge

Attorney, David R. McFarlin, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of the entry of the order

**Alfa General, LLC**
Cash Collateral Budget through February 22, 2014

| | Week ending 12/21/13 | Week ending 12/28/13 | Week ending 01/04/14 | Week ending 01/11/14 | Week ending 01/18/14 | Week ending 01/25/14 | Week ending 02/01/14 | Week ending 02/08/14 | Week ending 02/15/14 | Week ending 02/22/14 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | |
| Rental Income | | | $15,783.82 | | | | | $15,783.82 | | |
| | | | | | | | | | | |
| **Expense** | | | | | | | | | | |
| Building R & M | | | $593.18 | $500.00 | | | $593.18 | $500.00 | | |
| Electricity | | | | $900.00 | | | | $1,000.00 | | |
| Elevator Maintenance | | | | $393.75 | | | | | | $393.75 |
| Elevator (telephone) | | | | $269.16 | | | | | $395.77 | |
| HVAC | | | | $319.00 | | | | | $319.00 | |
| Insurance | | | | | | $1,134.00 | | $605.00 | | $1,134.00 |
| Janitorial | | | $750.00 | | | | $750.00 | | | |
| Sales and Use Tax | $285.39 | $653.86 | | $939.25 | | | | | $939.25 | |
| Miscellaneous | | | | | | | | $113.68 | $102.24 | $229.50 |
| Pest Control | | | $138.45 | | | | | | | |
| Property Mgmt[2] | | | $789.15 | | | | $789.15 | | | |
| Water & Sewer | | | $1,046.49 | | | | | $1,046.49 | | |
| Professional Fees (Accounting)[1] | | | | $150.00 | | | | | $150.00 | |
| Utility Deposts | | | | | | | | $2,513.00 | | |
| | | | | | | | | | | |
| **Total Expenses** | $285.39 | $653.86 | $3,317.27 | $3,471.16 | $0.00 | $1,134.00 | $2,132.33 | $5,778.17 | $1,906.26 | $1,757.25 |

[1] subject to court approval

[2] insider