UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

Alfa General, LLC,   Case No. 6:13-bk-15196-KSJ
   Chapter 11
       Debtor.
_____/

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND
REQUEST FOR PRELIMINARY HEARING ON FEBRUARY 26, 2014**

    First Southern Bank ("Lender"), by assignment from the FDIC, as receiver for First Commercial Bank of Florida, by and through its undersigned counsel, and pursuant to 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001, moves this Court to enter an order granting Lender relief from the automatic stay permitting the exercise of all statutory and contractual rights and remedies against certain real and personal property. In support, Lender states as follows:

**BACKGROUND**

    1.    The Debtor owns certain commercial real property located in Volusia County, Florida, together with minimal personal property (the "Property"). A description of the Property is attached as **Exhibit A**.

    2.    The Debtor is single asset real estate. (Dkt. No. 1).

**The Loan**

    3.    On March 24, 2008, First Commercial Bank of Florida ("First Commercial") made a loan to Debtor in the original principal amount of $2,490,000.00 (the "Loan"), which Loan is evidenced by that certain Mortgage Note dated March 24, 2008 in the original principal amount of $2,490,000.00, which was modified by that Note Modification dated December 31,

20309649 v1

2009, effective November 24, 2009 (as modified, the "Note"). A copy of the Note is attached as **Exhibit B**.

4. To secure payment of the Loan, Debtor executed and delivered to First Commercial that certain Mortgage Deed and Security Agreement dated March 24, 2008, recorded March 27, 2008 in Official Records Book 6210 Page 1666, Public Records of Volusia County, Florida (the "Mortgage"). A copy of the Mortgage is attached as **Exhibit C**.

5. To further secure payment of the Loan, Debtor executed and delivered to First Commercial that certain Collateral Assignment of Leases and Rents dated March 24, 2008, which was recorded on March 27, 2008 in Official Records Book 6210 Page 1676, Public Records of Volusia County, Florida (the "Assignment of Rents"). A copy of the Assignment of Rents is attached as **Exhibit D**.

6. To further secure payment of the Loan, Alfa executed and delivered to First Commercial that certain Security Agreement dated March 24, 2008 (the "Security Agreement"). A copy of the Security Agreement is attached as **Exhibit E**.

7. To further perfect its security interest, First Commercial filed a UCC-1 Financing Statement with the Florida Secured Transaction Registry on March 26, 2008 with filing number 200807936322; First Commercial also recorded a UCC-1 Financing Statement on March 27, 2008 in Official Records Book 6210, Page 1685, of the Public Records of Volusia County, Florida (collectively, the "Financing Statement"). A copy of the Financing Statement is attached as **Composite Exhibit F**.

8. On January 7, 2011, the Florida Office of Financial Regulation closed operations of First Commercial and appointed the FDIC as the receiver of First Commercial. On January 7, 2011, the FDIC sold the Loan and all documents evidencing the Loan to Lender. A copy of the

Assignment of Note, Mortgage and Loan Documents dated January 7, 2011 evidencing the sale of the Loan to Lender, which was recorded in Official Records Book 6693, Page 4026, *et seq.*, of the Public Records of Volusia County, Florida (the "Assignment"), is attached as **Exhibit G**.

9. In connection with the Assignment, the FDIC executed and provided to Lender that certain allonge dated January 7, 2011 to the Note (the "Allonge"). A copy of the Allonge is attached as **Exhibit H**.

10. As a result of the sale and assignment, Lender is the owner of the Loan and the owner and holder of the Note, the Mortgage, the Assignment of Rents, the Security Agreement, the Financing Statement, and all other documents that evidence the Loan (collectively, the "Loan Documents").

**Default and Forbearances**

11. On January 24, 2012, Debtor defaulted on the Loan by failing to make its required payment due.

12. To accommodate the Debtor, on June 28, 2012, Lender entered into a Forbearance Agreement with Debtor (the "First Forbearance Agreement"). A copy of the First Forbearance Agreement is attached as **Exhibit I**.

13. The First Forbearance Agreement provided, *inter alia*, that Lender would give Debtor until November 24, 2012, to bring the Loan current, in exchange for monthly interest only payments at 3.5%.

14. On November 24, 2012, the First Forbearance Agreement expired, and Debtor failed to bring the Loan current. Again to accommodate the Debtor, on December 3, 2012, Lender entered into a First Amendment to Forbearance Agreement with Debtor (the "Second

Forbearance Agreement"). A copy of the Second Forbearance Agreement is attached as **Exhibit J**.

15. The Second Forbearance Agreement provided, inter alia, that Lender would give Debtor until April 24, 2013, to bring the Loan current in exchange for monthly interest only payments at only 1.5%.

16. On April 24, 2013, the Second Forbearance Agreement expired and Debtor failed to bring the Loan current.

17. In addition, Debtor failed to pay its 2012 real property taxes, and Lender paid the taxes as a protective advance.

18. Debtor has not made even an interest only payment since May, 2013.

### Foreclosure and Final Judgment

19. On June 26, 2013, Lender instituted an action for foreclosure in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, Case No. 2013-31600 CICI.

20. On November 6, 2013, the Circuit Court entered a Final Judgment, setting a foreclosure sale of the Property for December 18, 2013 (the "Judgment"). A copy of the Judgment is attached as **Exhibit K**.

21. The Judgment provides that Debtor owes to Lender $2,575,169.56, plus interest at the statutory rate.

### Waiver of the Automatic Stay

22. In the post-default agreements with Lender, Debtor waived the protections of the automatic stay. Section 3.10 of the First Forbearance Agreement provides as follows:

> Section 3.10  <u>Covenants Pertaining to Bankruptcy and Creditor Rights</u>.  The Obligors knowingly, voluntarily and intentionally and after consultation and advice of counsel stipulate and agree to the following, to the fullest extent allowed by law and with the full

intention that such stipulations and agreements shall survive the filing of any bankruptcy, that, in the event that any party to this Agreement files for protection under the laws of Title 11 of the United States Code (11 U.S.C. § 101 et seq.) (herein referred to as the "Bankruptcy Code") (it being understood that this Agreement is not intended to preclude such filing) or if any involuntary petition in bankruptcy is filed against any one or all of them and is not dismissed within thirty (30) days after filing, at any time from and after the date hereof:

(a)     Lender gave up valuable rights and agreed to forebear from exercising legal remedies available to it in exchange for the promises, representations, acknowledgments and warranties of the Obligors as contained herein and Lender would not have entered into this Agreement but for such promises, representations, acknowledgments and warranties, all of which have been freely bargained for and accepted by Lender in good faith;

(b)     Lender shall be entitled to the immediate termination of the automatic stay provisions of 11 U.S.C. § 362, granting Lender complete relief and allowing it to exercise all of its legal rights and remedies, including, without limitation, the right to entry of an order providing for an immediate sale in any foreclosure action, and for the immediate issuance of a certificate of title to the successful bidder at any such foreclosure sale, and to pursue any and all remedies available to Lender under this Agreement and any of the Loan Documents, and pursuant to any provision of Florida or U.S. law; and the Obligors agree not to directly or indirectly oppose or otherwise defend against Lender's effort to gain relief from the automatic stay.  Provided that it is acting in good faith, Lender shall be entitled as aforesaid to the lifting of the automatic stay without the necessity or requirement to establish or prove the value of the subject business or the Collateral, the lack of adequate protection of its interest in the subject business or the Collateral, or the lack of equity in the subject business or Collateral.  It is specifically agreed and acknowledged by the Obligors that the lifting of the automatic stay hereunder by the appropriate Bankruptcy Court shall be deemed to be "for cause" pursuant to § 362(d)(1) of the Bankruptcy Code (11 U.S.C. § 362(d)(1)); . . . .

**Lender Is Undersecured and There
Is No Prospect of Reorganization**

23.     In its Motion to Value (Dkt. No. 19), Debtor asserts the value of the Property to be only $1,000,000.00.  As the Judgment is for $2,575,169.56, plus interest at the statutory rate, Lender is significantly undersecured.

24.     Debtor recently filed a Plan of Reorganization (Dkt. No. 20)(the "Plan") which relies on improper gerrymandering for the acceptance of an impaired class.  As Lender controls the unsecured class, the Plan cannot be confirmed without Lender's consent.

## MEMORANDUM OF LAW

### 11 U.S.C. § 362(d)(1)

25.     Cause under § 362(d)(1) may include a lack of adequate protection, and "has been defined variously by the courts analyzing the concept." *In re Nattchase Associates Ltd. P'ship*, 178 B.R. 409, 416 (Bankr. E.D. Va. 1994).

26.     Cause may include the failure to pay real estate taxes and the failure to make payments to a secured lender over a long period of time without an equity cushion.  *See Nattchase*, at 416 (stating that the "failure to make monthly payments under the loan for over one year, coupled with a small or nonexistent equity cushion was a basis for finding lack of adequate protection, [and] constituted cause" and that failure to pay real estate taxes "may also be sufficient to grant relief for cause").  *See also In re James River Associates*, 148 B.R. 790, 796 (E.D. Va. 1992)("The failure to pay real property taxes may constitute a basis for finding lack of adequate protection."); *In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012) (finding that a creditor's secured position is not adequately protected when a debtor fails to pay property taxes because of the existence of a superior tax lien generating superior interest expense).

27.     A debtor's bad faith may also constitute "cause" for granting relief from the stay. *See In re Club Candlewood Associates, L.P.*, 106 B.R. 752, 755 (Bankr. N.D. Ga. 1989) (stating that "[t]he standard for determining the existence of bad faith is the same whether the relief sought is dismissal or relief from the automatic stay").

28.     Relief from the automatic stay for lack of good faith is appropriate when there is no realistic possibility of an effective reorganization and it is evident debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984).

29.     Additionally, cause exists for relief from the automatic stay on account of a debtor's waiver in forbearance agreements. *See In re Alexander SRP Apartments, LLC*, 2012 WL 1910088, *5 (Bankr. S.D. Ga. Apr. 20, 2012).

30.     Courts will uphold a waiver of automatic stay in the "appropriate circumstances," including as follows:

(a)     whether the waiver was in an initial loan document, or in a later forbearance;

(b)     whether the forbearance granted significant concessions;

(c)     whether the debtor is a sophisticated party;

(d)     whether the waiver was the product of fraud, mistake, coercion, or any other factor where public policy would negate the waiver;

(e)     whether other creditors or parties in interest have objected to relief from stay;

(f) whether, but for the forbearance, the subject property would have long since been foreclosed or restructured in an earlier bankruptcy; and

(g) whether there is equity in the subject property.

*Id.* at *7.

31. In this case, the Debtor has filed a single asset bad faith case, has failed to pay property taxes for 2012, and has failed to escrow funds for property taxes for 2013.

32. In addition, Debtor waived the protections of the automatic stay in a post-default forbearance arrangement, where Lender made significant concessions including reducing the interest rate to 1.5%; where Debtor is a sophisticated real estate manager who has asserted that his management company manages over 40 properties; where the waiver was clearly not a product of mistake, fraud, or coercion; where no other substantial party is even involved in the case to object to relief from stay; where, but for the forbearance, the Property would have been foreclosed by Lender long before; and where the Debtor itself asserts there is a deficiency of over $1.5 million.

## 11 U.S.C. § 362(d)(2)

33. "What [§ 362(d)(2)] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original).

34. In other words, "there must be a `reasonable possibility of a successful reorganization within a reasonable time' . . . ." *Id.* (citations omitted). *See also In re Annicott Excellence, LLC*, 258 B.R. 278, 284 (Bankr. M.D. Fla. 2001).

35. In this case, the Debtor has no equity in the Property and reorganization for this Debtor is simply not "in prospect." There is no "reasonable possibility of a successful reorganization within a reasonable time." Without Lender's consent, the Debtor will not have an impaired accepting class for the Plan or for any amended plan.

## REQUEST THAT PRELIMINARY HEARING BE SET ON FEBRUARY 26, 2014

36. Section 362(e)(1) provides that a preliminary hearing must be held within thirty (30) days of the filing of a request for relief from stay or the stay will terminate. A creditor, however, may waive the protections of § 362(e)(1). *See In re Bishop*, 2010 WL 4456165, *4 (10th Cir. BAP Nov. 4, 2010)(" However, under the facts of this case, § 362(e) does not apply because Chase waived the benefit of automatic termination of the stay on the thirtieth day when it selected a hearing date more than thirty days after the filing of its Motion for Stay Relief.").

37. In the interests of judicial economy, Lender makes a limited waiver of its rights under § 362(e)(1) so that the preliminary hearing may be heard on or before February 26, 2014, at the same time as other matters in this case, but reserves all other rights under § 362(e)(1).

**WHEREFORE**, Lender respectfully requests this Court enter an Order immediately modifying and terminating the automatic stay to permit Lender to exercise all of its statutory and contractual rights and remedies in and to the Property, waiving the stay imposed by Rule 4001(a)(3), setting a preliminary hearing on February 26, 2014, and granting such other and further relief as the Court deems appropriate.

Dated this 17th day of January, 2014.

          Respectfully submitted,

          */s/ Michael A. Nardella*
          **Eric S. Golden, Esq.**
          Florida Bar Number: 0146846
          **Michael A. Nardella, Esq.**
          Florida Bar Number: 51265
          **BURR & FORMAN LLP**
          200 South Orange Avenue, Suite 800
          Orlando, Florida  32801
          Phone:  (407) 540-6600
          Fax: (407) 540-6601
          E-mail: egolden@burr.com
             mnardella@burr.com

          **ATTORNEYS FOR**
          **FIRST SOUTHERN BANK**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 17, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on January 17, 2014 by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and/or U.S. Mail, postage prepaid, to the following:  Debtor: Alfa General, LLC, 1307 S. International Parkway, Ste. 1091, Lake Mary, Florida 32746; Debtor's Counsel: David R. McFarlin, Esq., Wolff, Hill, McFarlin & Herron, P.A., 1851 West Colonial Drive, Orlando, FL 32804; Timothy S. Laffredi, Esq., Office of the U.S. Trustee, George C. Young Courthouse, 400 West Washington Street, Orlando, Florida 32801, and to the creditors and parties in interest on the attached matrix.

                */s/ Michael A. Nardella*
                Michael A. Nardella, Esq.