UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

Alfa General, LLC,                                    Case No. 6:13-bk-15196-KSJ
                                                      Chapter 11
           Debtor.
_____/

**FIRST SOUTHERN BANK'S BRIEF IN OPPOSITION TO CLASSIFICATION
OF CLAIMS IN DEBTOR'S PLAN OF REORGANIZATION**

First Southern Bank ("First Southern" or "Lender"), successor-in-interest to First Commercial Bank of Florida, by assignment from the FDIC, as receiver for First Commercial Bank of Florida, by and through its undersigned counsel and pursuant to this Court's directive at the January 7, 2014 hearing, hereby submits this Brief in Opposition to the classification of claims in the Plan of Reorganization dated January 6, 2014 (Doc. No. 20)(the "Plan") filed by Debtor, Alfa General, LLC ("Alfa" or the "Debtor").  In support, Lender states as follows:

**BACKGROUND**

This is a single asset real estate case.   The Debtor owns certain commercial property located in Volusia County, Florida, consisting primarily of office space which it offers for lease. Lender has a security interest in the Debtor's real and personal property (the "Property").  The Property secures a loan to Debtor in the original principal amount of $2,490,000.00 (the "Loan"). *See* Claim 2-1.

On November 6, 2013, the circuit court in and for Volusia County, Florida, entered a Final Judgment of Foreclosure and established that that Debtor owes the Lender $2,575,169.56, plus interest at the statutory rate.  As of the petition date, Lender holds a total claim amount of $2,589,100.51.  *See* Claim 2-1.

The Debtor filed a Verified Motion to Determine Secured Status (Doc. No. 19) (the "Motion to Value"), in which the Debtor asserts that the value of the Property is only $1,000,000.00. Based on the Debtor's asserted value, Lender has an unsecured deficiency claim against the Debtor of $1,589,100.51. Although the Lender believes that the Property is worth more than $1,000,000.00, the Lender is still significantly undersecured.

The Plan includes five classes of claims. Classes I and II are unimpaired and are not relevant to this Brief. Class III consists of the allowed secured claim of Lender. Class IV consists of Lender's unsecured deficiency. Separate from Class IV, Class V consists of all other unsecured claims. The Plan provides that both Class IV and Class V will share pro-rata in an unsecured note of $10,000.00, payable over 60 months without interest.

## LEGAL ARGUMENT

Section 1122(a) provides in pertinent part that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." "While the statute itself deals only with the requirement that dissimilar claims may not be classified together, courts have uniformly held that it also prohibits separate classification of similar claims unless supported by legitimate business reasons." *In re SunCruz Casinos, LLC*, 298 B.R. 833, 837 (Bankr. S.D. Fla. 2003)(Hyman, J.).

"In determining whether a plan may classify an undersecured creditor's deficiency claim separately from other general unsecured claims, the overwhelming majority of courts have not allowed dissimilar treatment or voting distinctions based on separate classification." *Id.* (citing fourteen representative cases, including opinions from the Second, Third, Fourth, Fifth, and Eighth Circuit Courts of Appeals).[1]  "These courts reject separate classification as an

---

[1] Although the Eleventh Circuit Court of Appeals has not decided the specific issue of whether an unsecured deficiency claim may be classified separately from general unsecured claims, it has articulated that

impermissible attempt to 'gerrymander' classes to create an impaired class of claims that will vote in favor of the plan in order to satisfy section 1129(a)(10), which requires at least one impaired accepting class to confirm a plan." *Id.*

The reasoning behind this general rule is perhaps best articulated by the Eighth Circuit Court of Appeals in *In re Lumber Exch. Bldg. Ltd. P'ship*, 968 F.2d 647 (8th Cir. 1992). In *Lumber*, the debtor owned a commercial building which was worth far less than the non-recourse secured debt. *Id.* at 648. In order to secure an impaired accepting class, the debtor classified the unsecured deficiency separate from the general unsecured creditors, whom it called its "trade creditors." The debtor proffered three of the most commonly argued justifications for its gerrymandering, all of which the Eighth Circuit rejected as explained below in this Brief. *Id.* at 649.

**I.     The Origin of an Unsecured Claim Is Irrelevant**

First, the debtor argued that the secured creditor's rights under § 1111(b) made the nature and origin of the creditor's deficiency claim different than the nature and origin of the general trade creditors. *Id.* The Eighth Circuit disagreed, noting that "[h]ow the claims of [the secured creditor] and the trade creditors achieved their status does not alter their current legal character and thus does not warrant separate classification." *Id.*

Thus, according to the Eighth Circuit, it is not a question of how the claim came into existence, but instead, a question of what the claim is now. The past nature of the claim is

---

"[t]here must be some limit on a debtor's power to classify creditors. . . . The potential for abuse would be significant otherwise. . . . If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed." *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990) (internal citations omitted); *see also SunCruz* 298 B.R. at 838 (citing and extrapolating from *Holywell* in determining that deficiency claims cannot be separately classified).

therefore irrelevant and not a justifiable business reason for classifying it differently in the present and future.

This specific language in *Lumber* was quoted by Judge Briskman in *In re Holley Garden Apartments, Ltd.*, 223 B.R. 822, 825 (Bankr. M.D. Fla. 1998) when he rejected similar arguments from a debtor that the existence of rights under § 1111(b) justified separate classification. In coming to the same conclusion as the Eighth Circuit in *Lumber*, Judge Briskman stated that "there is no unique legal distinction between [a] deficiency claim and the general unsecured creditors." *Holley Garden*, 223 B.R. at 824-25. Judge Briskman found that the Debtor failed to prove a business justification for its separate classification and that the classification was done merely to obtain an impaired assenting class. *Id.* As a result, Judge Briskman sustained the secured creditor's objection and held that the plan could not be confirmed. *Id.*

In fact, some courts have held that allowing separate classification of deficiencies would effectively undermine the policy behind the § 1111(b) election. *See, e.g., In re Boston Post Rd. Ltd. P'ship*, 21 F.3d 477, 483 (2d Cir. 1994). As these courts explain, "[t]he purpose of the Section 1111(b) election is to allow the undersecured creditor to weigh in its vote with the votes of the other unsecured creditors." *Id.* "Allowing the unsecured trade creditors to constitute their own class would effectively nullify the option that Congress provided to undersecured creditors to vote their deficiency as unsecured debt." *Id.*

These opinions illustrate two important concepts. First, an unsecured claim is an unsecured claim, regardless of how it arose and regardless of a secured creditor's rights under § 1111(b), which rights do not provide a "business justification" for separate classification. Second, Congress intended for undersecured creditors to have a choice between being treated as fully secured and not having an unsecured vote, or being bifurcated and having an unsecured

vote, and by classifying them separately, this intention is frustrated. In the instant case, it is plain that the Debtor's Plan classifies claims with identical legal rights differently and that the Plan interferes with the Lender's rights under § 1111(b).

**II.     The Plan's Exact Same Treatment for Classes IV and V Further Evidences the Similarity of the Claims**

The second justification put forth by the debtor in *Lumber* is that separate classification of deficiencies may be "warranted because secured creditors look to different assets for repayment than do unsecured creditors and because the maintenance of good business relationships is important to a debtor's ongoing business." *Lumber*, 986 F.2d at 649. While the Eighth Circuit admitted that there is some authority for separately classifying important ongoing trade creditors, this would only be the case if such creditor is "necessary to a debtor's ongoing business." *Id.*

The Eighth Circuit, however, did not need to do any in-depth review of the facts to determine whether the debtor genuinely needed to maintain essential business relationships with each and every other unsecured creditor (other than the deficiency). Instead, the court looked to the plan, and found that the unsecured trade creditors and the deficiency creditor. *Id.* The Eighth Circuit reasoned that there was no credible argument for separate classification based on maintenance of business relationships where "[t]he proposed plan treats trade creditors less generously, not more." *Id.*[2]

This same argument was rejected by the Fifth Circuit in *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1280-81 (5th Cir. 1991). In *Greystone*, the debtor argued that the

---

[2] Although the court in *Lumber* characterized the treatment of the trade creditors as "less favorable," it appears later in the opinion that both class were to share pro rata in a pool of funds. *Lumber*, 986 F.2d at 649. This is precisely what the Debtor is doing in the instant case. Either way, the same treatment or less favorable treatment for trade creditors undercuts any argument that they may be classified separately to preserve business relationships.

"realities of business" required separate classification for trade creditors, but nevertheless, provided for the same treatment for both classes in its plan. *Id.* at 1280. In rejecting this argument, the Fifth Circuit stated that even if the plan had provided for more generous treatment for trade creditors, the classification scheme was still improper as the trade creditors were providing vanilla goods and services. *Id.* at 1281. The Fifth Circuit continued, stating that to justify a separate classification the debtor would have to make a showing that there was a "limited market" for these goods and services and that the debtor would be unable to obtain them without giving these creditors preferential treatment, a standard apparently very similar to the one to establish critical vendors. *See id.* at 1281.

In the instant case, the Plan provides for the same treatment for Lender's deficiency claim and other unsecured creditors. Plainly, these are not critical vendors who provide specialized goods or services or who the Debtor believes need preferential treatment.

A review of Schedule F (Doc. No. 1) reveals that the very limited amount of trade creditors with unsecured claims are providers of vanilla goods and services, e.g., a landscaper, law firms, an accountant, an elevator inspector. Assuming *arguendo* that the Debtor was offering better treatment for certain of these unsecured creditors (which it is not), there would be no business reason to do so as these creditors do not provide specialized goods or services and there is no evidence that there is a limited market for these goods and services.

### III.    Fairness Does Not Dictate Separate Classifications of Deficiency Claims

The third justification raised by the debtor in *Lumber* was that fairness dictated different classification and treatment on account of the massive disparity in claim amounts. *Lumber*, 986 F.2d at 649-50. The Eighth Circuit first noted that this argument was "ironic" and "untenable" based on the terms of the debtor's plan which provided that both parties shared from a common

pool of funds. *Id.* The court also implied that the minimal amount of the trade debt versus the deficiency debt actually made it more practical to combine them in one class. *See id.* at 650. The court then noted that separate classification was actually unfair because it deprived the secured creditor of the benefits intended by § 1111(b). *Id.* at 649-50. Based on this analysis, the Eighth Circuit concluded that "fairness" did not justify separate classification.

The debtor in *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Associates*, 987 F.2d 154, 161-62 (3d Cir. 1993) made a similar fairness argument to justify its separate classification for a deficiency claim. In *John Hancock*, the debtor "assert[ed] that holders of unsecured deficiency claims often have an interest in voting to defeat any plan so that they can obtain relief from the automatic stay and foreclose, whereas holders of other unsecured claims often have an interest in voting to accept reorganization because they may receive nothing if relief from the automatic stay is granted or the debtor is liquidated." *Id.* at 161. This would, according to the debtor, result in unfair domination by the undersecured creditor. *Id.*

The Third Circuit flatly rejected this argument, holding that "[t]he distinction between those who do and do not 'truly act[ ] in their interests as unsecured creditors' finds no support in the Code and seems inconsistent with economic reality." *Id.* The court continued that, "[a]bsent bad faith or illegality (*see* 11 U.S.C. § 1126(e) (1988)), the Code is not concerned with a claim holder's reason for voting one way or the other, and undoubtedly most claim holders vote in accordance with their overall economic interests as they see them." *Id.*

In the instant case, it is not unfair for an undersecured creditor to control the unsecured class when its claim is proportionally larger than the trade creditors. That is simply the mathematics of the Code, as those with the most to lose are given the most influence. To deprive

a secured creditor of this right would be to eliminate an important protection embedded in § 1111(b), and there is no practical reason to classify such claims separately.

### IV.     Case Law from the Ninth Circuit Is Not Binding, and Is Inapposite

There are courts, however, that have allowed separate classification of deficiency claims. As Judge Hyman has stated, the "overwhelming majority of courts" have agreed that deficiency claims cannot be separately classified. *SunCruz*, 298 B.R. at 837.  Nevertheless, there are a minority of courts that have allowed separate classification.  For instance, in *In re LOOP 76, LLC*, 442 B.R. 713, 718 (Bankr. D. Ariz. 2010) *aff'd, In re Loop 76, LLC*, 465 B.R. 525 (B.A.P. 9th Cir. 2012), the court held that the existence of "a personal guaranty by a debtor's principals can render the deficiency claim both factually and legally dissimilar from the unsecured trade vendors' claims." *Id.*  This is because the secured creditor "need not be concerned about whether the plan maximizes the value of the estate and the return to creditors because it is assured of payment from nondebtor sources." *Id.*

This position is undeniably in the minority and in conflict with a number of cases, including those cited above.  Even another bankruptcy judge in Arizona refused to follow this precedent, finding in *In re Reid Park Properties Ltd. Liab. Co.*, 2012 WL 2934001, *2 (Bankr. D. Ariz. July 18, 2012) that, when the guarantor is insolvent, different classification is still improper as there is "no basis to assume that [the undersecured creditors] have another viable source of repayment for their unsecured claims." *Id.*

In the instant case, the Debtor's principal has made clear that deficiency will not be collectible.  Even, assuming *arguendo,* that *Loop 76* was controlling, or even persuasive, the Debtor's princpal provides no "viable source of repayment," and Debtor cannot argue that, in

effect, Lender's unsecured position is justifiably dissimilar from that of any other unsecured creditor.

Despite the minority of opinions holding otherwise, cases from Florida, including those cited above, make it clear that deficiency claims cannot be separately classified. *See also In re Lezdey*, 332 B.R. 217, 224 (Bankr. M.D. Fla. 2005)(May, J.) ("The Amended Plans also violate the requirements of Section 1129(a)(10) of the Bankruptcy Code because the plans impermissibly classify the unsecured claim of Wachter in Class 4 and the other unsecured claims in a separate Class 5. . . . There is no justification for this 'gerrymandering,' other than the creation of an impaired class of creditors (Class 5) who may vote for the plans."); *In re Porcelli*, 319 B.R. 8, 11 (Bankr. M.D. Fla. 2004) (Paskay, J.) (" It is without dispute that the Debtor's proposed segregation and subordination of the FTC's claim to those of the other unsecured creditors is improper. . . . The plan cannot provide for disparate treatment of claims that have identical legal rights."); *In re Austin Ocala Ltd.*, 152 B.R. 773, 776 (Bankr. M.D. Fla. 1993) (Proctor, J.) ("The Debtor's Plan proposed to separately classify NationsBank's unsecured deficiency claim, Essex's unsecured claim, non-insider unsecured claims, and insider unsecured claims. . . . The Debtor failed to offer a sufficient justification for the separate classification of these claims, all of which are nothing more than general unsecured claims.").

## CONCLUSION

As recognized by Judge Briskman in *Holley Garden*, "the one clear rule that emerges from otherwise muddled caselaw on 1122 claims classification [is] **thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.**" *Holley Garden*, 223 B.R. at 825 (quoting *Greystone,* 995 F. 2d at 1279) (emphasis added). This is precisely what the Debtor is attempting to do. Debtor's only methods of

confirming a plan are to either get Lender's consent, or to gerrymander Lender's claim into a separate class in the bankruptcy world's version of "voter suppression."

Although the case law is not universal, the view that deficiency claims are not separately classifiable from general unsecured claims is not only the local view and the majority view, but also the correct view. When different creditors have, at the present time, "identical legal rights" as to a debtor, a debtor should have a high burden to meet in order to classify them separately. A deficiency claim is simply nothing but an unsecured obligation, with no special rights or recourse, and is legally identical to the claim of a trade creditor. The origin of the debt is not relevant.

Moreover, to hold that deficiency creditors can be classified separately would disenfranchise undersecured creditors who often have the most at stake. This is especially important where it is obvious that the debtor is engineering an impaired accepting class, and where the separately classified creditors are still receiving the same treatment.

When a debtor cannot "propose a confirmable plan without improperly classifying creditors, [a] bankruptcy court [i]s free to dismiss its Chapter 11 case or to convert it to a case under Chapter 7, whichever [i]s in the best interest of creditors and the estate." *Lumber*, 968 F.2d at 650 (quoting 11 U.S.C. § 1112(b)). As this Debtor cannot propose a confirmable plan, Lender respectfully requests that this Court grant Lender's Motion for Relief from Stay or Motion to Dismiss.

Dated this 31st day of January, 2014.

        Respectfully submitted,

        */s/ Michael A. Nardella*
        **Eric S. Golden, Esq.**
        Florida Bar Number: 0146846
        **Michael A. Nardella, Esq.**
        Florida Bar Number: 51265
        **BURR & FORMAN LLP**
        200 South Orange Avenue, Suite 800
        Orlando, Florida  32801
        Phone:  (407) 540-6600
        Fax: (407) 540-6601
        E-mail: egolden@burr.com
                mnardella@burr.com

        **ATTORNEYS FOR**
        **FIRST SOUTHERN BANK**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on January 31, 2014 by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and/or U.S. Mail, postage prepaid, to the following:  Debtor: Alfa General, LLC, 1307 S. International Parkway, Ste. 1091, Lake Mary, Florida 32746; Debtor's Counsel: David R. McFarlin, Esq., Wolff, Hill, McFarlin & Herron, P.A., 1851 West Colonial Drive, Orlando, FL 32804; and Timothy Laffredi, Esq. Trial Attorney, Office of the U.S. Trustee, George C. Young Courthouse, 400 West Washington Street, Orlando, Florida 32801.

        */s/ Michael A. Nardella*
        Michael A. Nardella, Esq.