UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Alfa General, LLC | ) | Case no.:  6:13-bk-15196-KSJ |
| | ) | Chapter 11 |
| Taxpayer ID No. 59-3747651 | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**DEBTOR'S RESPONSE TO BANK'S
SEPARATE CLASSIFICATION MEMORANDUM**

Alfa General, LLC, the above named Debtor, responds to memorandum (Doc. no.  46) by First Southern Bank ("Bank") regarding separate classification issue.

A.    Background.

1.    Chapter 11 Case.    On December 17, 2013 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code.  Debtor continues to operate its business as debtor-in-possession. Debtor's case is a single asset real estate case.

2.    Description of Debtor and Debtor's business.  Debtor is a Florida limited liability company with 5 members.    Debtor has no employees.  Debtor owns a commercial office building located at 1673 Mason Avenue, Daytona Beach, Florida (the "Real Property").  The Real Property consists of approximately 23,500 sq. ft. of rentable space. Debtor has 3 tenants occupying approximately 14,444 sq. ft. Debtor's gross revenue for 2013 was approximately $164,104.00**.** The Real Property is managed by an affiliate real estate management company.

G:\11675\RESPONSE re separate classification issue.docx

3.    Bank Claim.    Subject to defenses and offsets, Bank asserts a claim ("Bank Claim")  in the approximate amount of $2,575,169.56, secured by mortgage against the Real Property.

a.    Section 506 Valuation.  Debtor has filed motion (Doc. no. 19) under code section 506 to determine value of secured claim component of Bank Claim.

b.    1111(b) Election.  Assuming Bank does not make election under Code section 1111(b)[1], then the Bank Claim will consist of:  a) secured claim equal to the value of the Real Property; and b) unsecured deficiency claim ("Bank Deficiency Claim") equal to the difference in the amount of the Bank Claim and the value of the Real Property.

c.    Guarantors.  The Bank Claim is personally guaranteed by the following insiders of Debtor (the "Guarantors"): a) Louis Joachim and his spouse; and b) Dover International Realty, Inc.   Bank filed an action against the Guarantors based on the guaranty and judgment was entered in favor of the Bank.

4.    Chapter 11 Plan.  Debtor filed a chapter 11 Plan and Disclosure Statement (Doc. nos.  20 and 21).  A hearing to consider the disclosure statement is scheduled for February 26, 2014.  Doc no 26.  The Plan provides in relevant part:

The following Claims are impaired:

Class III - Allowed Secured Claim of First Southern Bank.
With respect to each holder of a Claim in this Class:

a.    The holder will retain the lien securing the Claim to the extent of the Allowed amount of the Claim;

---

[1]   Bank may or may not make election under section 1111(b), but Bank seeks an advisory opinion regarding the classification issue assuming Bank does not make election under section 1111(b).

2

b.      If the Class does not make an election under Code section 1111(b), then each holder will receive on account of the Allowed Secured Claim a modified renewal note on the following terms:

i.      principal balance equal to the value, as of the Effective Date, of Allowed Secured Claim. Debtor has filed a motion to determine value of Allowed Secured Claims and estimates value at $1 million.

ii.      Interest from the Effective Date at a rate such that the deferred cash payments under the Plan will have a value, as of the Effective Date, equal to the value of the Allowed Secured Claim. Debtor will request the Court to determine the rate at the hearing to consider confirmation of the Plan.

iii.      Equal monthly payments of principal and interest based on a 25-year amortization commencing 30 days after the Effective Date and on the same date of each month thereafter.

iv.      Principal and interest due 5 years following the Effective Date.

c.      If the Class makes the election under Bankruptcy Code section 1111(b), then the Class member will receive on account of the Allowed Secured Claim a modified renewal note on the following terms:

i.      principal balance equal to the amount of the Allowed Secured Claim, approximately $2.6 million.

ii.      equal monthly payments commencing thirty days after the Effective Date and on the same date of each month thereafter in a total amount equal to the amount of the Allowed Secured Claim.

iii.      The amount of each monthly payment shall be determined by the Court such that the value of the payments, as of the Effective Date, is not less than the value

3

of the Allowed Secured Claim.  Assuming a discount rate of 5.25%, Debtor projects 540 monthly payments in the amount of $4,832.50 each, resulting in total payments in the amount of $2,609,550, with a present value of $1 million.

        d.    The loan documents evidencing the Claim will be assumed and reinstated except: i) as expressly modified by the Plan; and ii) any provision dealing with the bankruptcy or insolvency of Debtor or any guarantor.

        <u>Class IV - Allowed Unsecured Claims (Deficiency)</u>.  This Class consists of Allowed Unsecured Claims where i) the holder has not made election under Code section 1111(b); ii) the Court has determined under Code section 506(a) that  the holder has an Unsecured Claim; and iii) such Claim is personally guaranteed by one or more Insiders.  The holders of Allowed Unsecured Claims in Classes IV and V shall receive on account of such Claims a Pro Rata Share of Unsecured Notes. The aggregate principal amount of Unsecured Notes for the combined Classes IV and V will be the lesser of: (i) the amount of Allowed Unsecured Claims; and (ii) $10,000.00. The Unsecured Notes will be payable, without interest in 60 equal monthly installments

        <u>Class V – Allowed Unsecured Claims (Other)</u>. This Class consists of Allowed Unsecured Claims except Allowed Unsecured Claims in Class IV.  The holders of Allowed Unsecured Claims in Classes IV and V shall receive on account of such Claims a Pro Rata Share of Unsecured Notes. The aggregate principal amount of Unsecured Notes for the combined Classes IV and V will be the lesser of: (i) the amount of Allowed Unsecured Claims; and (ii) $10,000.00. The Unsecured Notes will be payable, without interest in 60 equal monthly installments.

B.    <u>Legal Authority and Argument</u>

1.    <u>Bank Seeks an Improper Advisory Opinion</u>.

Bankruptcy Rule 3014 provides in relevant part:

    An election of application of section 1111(b)(2) of the Code by a class of secured creditors in a chapter . . . 11 case may be made at any time prior to the

4

> conclusion of    the  hearing  on  the  disclosure
> statement . . . .

The Court has scheduled a hearing to consider Debtor's disclosure statement for February 26, 2014.  If Bank makes election under section 1111(b)(2), then "such claim is a secured claim to the extent that such claim is allowed" and Bank will not have an unsecured claim. If Bank does not have an unsecured claim, then separate classification of unsecured claims is an academic proposition and any ruling on the propriety of separate classification would be an improper advisory opinion.

The federal courts do not render advisory opinions. Rather, concrete legal issues, presented in actual cases, not abstractions, are requisite. *Golden v Zwickler* 394 U.S. 103, 108(1968). See *Matter of Hamlin's Landing Joint Venture*, 81 B.R. 651(Bankr. M.D. Fla 1987)(Creditor's motion for clarification of whether automatic stay applied to nondebtor guarantors was constitutionally impermissible request for advisory opinion**).**

Similarly, until such time as Bank makes election under section 1111(b), if at all, a ruling on separate classification would be an improper advisory opinion.

2.    <u>The Bank Claim Is Not Substantially Similar To Other Unsecured Claims.</u>

Bankruptcy Code section 1122(a) provides in relevant part:

> . . . a plan may place a claim. . . in a particular class
> only if such claim. . . is substantially similar to the
> other claims. . . of such class."

FRBP 3013 provides in relevant part:

> For the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors. . . pursuant to sections 1122. . . . of the code.

The Plan provides:

    a.    <u>Class IV-- Allowed Unsecured Claims (Deficiency)</u> consists of the Bank Deficiency Claim; and

    b.    <u>Class V – Allowed Unsecured Claims (Other)</u>, consists of Allowed Unsecured Claims except Allowed Unsecured Claims in Class IV.

The Bank Deficiency Claim is not substantially similar to Claims in Class V in at least the following respects:

    a.    the holder of the Bank Deficiency Claim has a collateral source of recovery against the Guarantors;

    b.    The holder of the Bank Deficiency Claim has a unique right under Code section 1111(b) to make and election that is not available to holders of Claims in Class V; and

    c.    The Bank Deficiency Claim is created by application of Bankruptcy Code section 506.[2]

In *In re Loop* 76 LLC, 465 B.R. 525(9th Cir BAP 2012), the court considered the precise issue presented in this case. The debtor owned a mixed use office and retail property. The property was subject to a mortgage in favor of a bank. The mortgage obligation was

---

[2] Debtor has filed motion to determine value of secured claim. Doc. no. 19.

personally guaranteed by the principals of the debtor and their spouses. The debtor defaulted on the mortgage obligation. The bank filed an action against the debtor and the guarantors. The debtor filed a petition for relief under chapter 11. Debtor filed a chapter 11 plan. The plan provided that the bank would receive a 10-year payout of a $17 million secured claim and a 10% distribution on account of a $6 million unsecured deficiency claim. The bank's unsecured deficiency claim was classified separately from other unsecured creditors. The bank objected to the proposed classification of unsecured claims and argued the classification was impermissible "gerrymandering" to achieve an accepting impaired class. The debtor argued the bank's deficiency claim was not "substantially similar" to other unsecured claims because: i) the claim was partially secured; and ii) the bank was engaged in litigation with 3rd party guarantors that provided an additional source of recovery. The bankruptcy court found that "a claimant who has a third-party source of repayment for its claim is dissimilar from a claimant who lacks such alternative sources of payment". Therefore, the bankruptcy court ruled in favor of the debtor regarding the separate classification of the banks deficiency claim.

   On appeal, the appellate panel framed the issue as whether a bankruptcy court may consider the existence of a third party guaranty of an unsecured claim when determining whether a creditor's claim is "substantially similar" to other unsecured claims. Id. at 535. The appellate panel affirmed the decision of the bankruptcy court and ruled that the existence of a third-party source of payment should be considered when determining whether unsecured claims are substantially similar. Id at 541. The appellate panel explained that because the bank held a third party source of recovery against the guarantors for its deficiency claim, the

7

deficiency claim had distinguishing  characteristics from other unsecured claims. Id at 541. Therefore, the court found there was at least one " special circumstance" that did not apply to other unsecured creditors and warranted separate classification.

In *Steelcase Inc. v Johnston*, 21 F.3d 323(9th Cir 1994), the leading case  in the Ninth Circuit  on the issue of classification,. James Johnston had filed chapter 11 cases for himself and a corporation he controlled, Capital Office Systems, Inc.("COS"). Steelcase asserted a claim that was secured by assets of COS and personally guaranteed by Johnston. In the individual chapter 11 case, Johnston  proposed a plan that place the Steelcase unsecured claim in its own class. The bankruptcy court and appellate panel determined the separate classification was proper. The issue presented on appeal was the proper standard for determining when an unsecured claim may be separately classified from other unsecured claims under section 1122(a).  The court held that separate classification of the Steelcase claim did not violate section 1122(a) because "the legal character of [the Steelcase] claim[was] not substantially similar to the other claims" in the following respects: i) the claim was partially by an secured interest in assets of COS; ii)  the claim was the  only unsecured claim that was being litigated; and iii)  if Steelcase was successful in its litigation, then  the  claim could be paid in full ahead of other unsecured creditors. *Id.*, at 326. See also *In re Bakarat*, 99 F.3d 1520, 1526(9th Cir 1996) (specific characteristics or "special circumstances" may be considered when a debtor separately classifies  unsecured claims, including deficiency claims.); *In re Greenwood Point LP*, 2011 WL 721549 (Bankr. SD Ind. 2011) (separate classification of unsecured deficiency claim permissible).

In *In re Crosscreek Apts., Ltd.*, 213 B.R. 521 (Bankr. ED Tenn. 1997), the debtor's chapter 11 plan in  a single asset real estate case proposed  to separately classify a secured creditor's $1.075 million unsecured deficiency claim from general unsecured trade debt totaling  approximately  $26,000.  The court held that the separate classification   did not constitute improper gerrymandering of classes, even though separate classification enabled plan's proponents to obtain acceptance of plan by impaired class, which they could not have done absent the segregation.  But see, *In re 4th Street Investors, Inc.*, 2012 WL 1745500 (Bankr. C D Cal 2012); *In re Holly Garden Apts,Ltd.,*223 B.R. 822 (Bankr. M.D. Fla. 1998 )(B.J. Briskman) (debtor failed to establish justifiable business reason for separate classification of unsecured deficiency claim).

In *In re Woodbrook Assoc.*, 19 F.3d 312(7th Cir 1994), the debtor partnership owned an over encumbered single asset real estate project. The debtor's plan proposed to separately classify the secured creditor's deficiency claim. The court determined that the 1111(b) deficiency claim was substantially different from those of general unsecured creditors and ruled that separate classification is not only permitted, but required. Id at 318-19. See also *In re SM 104 Ltd.*, 160 B.R. 202, 220(Bankr. S.D. Fla. 1993)(Separate classification "is not only permissible, but mandatory."). But, see *In re Greystone III Joint Venture,* 995 F.2d 1274 (5th Cir 1991) (unsecured deficiency claim cannot be separately classified).

In this case, the Bank Deficiency Claim is not substantially similar to other unsecured claims.  Therefore, it is appropriate and mandatory that the court approve separate classification of the Bank Deficiency Claim as contemplated in the plan.

9

3.    <u>Separate Classification is Supported by Legitimate Business Reasons</u>.

If the Bank Deficiency Claim is substantially similar to other unsecured claims, then Classes IV and V will receive the same treatment[3] and separate classification is supported by legitimate business reasons. *In re Holley Garden Apartments, Ltd.*, 223 B.R. 822, 825 (Bankr. M.D. Fla. 1998) (business justification required for separate classification of similar claims); *In re SunCruz Casinos, LLC*, 298 B.R. 833, 837 (Bankr. S.D. Fla. 2003)(Hyman, J.)(separate classification of similar claims must be supported by legitimate business reasons).

Although not unlimited, "the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case. . ." *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir 1990). See also, *Hanson v. First Bank of South Dakota*, 828 F.2d 1310(8th Cir 1987) (The bankruptcy court has broad discretion in approving or rejecting a proposed classification of claims).

In this case, the facts and circumstances support the exercise of this Court's broad discretion in approving the proposed classification of the Bank Deficiency Claim. The differing objectives and motivations of Bank and other unsecured creditors and basic concepts of fairness establish business justification and support separate classification. The unsecured creditors in Class V represent trade debt. Class V has an interest in an ongoing relationship with Debtor. Moreover, Bank readily concedes that, in the absence of confirmation of the Plan, the

---

[3]  Bankruptcy Code section 1123(a)(4) provides that a plan shall " provide the same treatment for each class of claims . . . of a particular class. . . ."

Bank will foreclose and Class V (and Class IV) will receive nothing.[4]   The Bank may or may not hold one-half of the unsecured claims,[5] but Bank essentially argues that if it controls one-third of the unsecured claims, then Bank should be permitted to exercise its prerogative to overrule the majority and force a foreclosure that will permit no recovery on account of unsecured claims.[6]   Bank seeks to vote the Bank Deficiency Claim to deny recovery to holders of all unsecured claims.

 The bankruptcy code favors reorganization over liquidation.   See *In re St. Petersburg Harborview Hotel Corp*., 168 B.R. 770, 773 (Bankr. M.D. Fla. 1994). This Court has broad discretion to approve classification. Separate classification will protect the interests of trade creditors while providing payment on account of the Bank Unsecured Deficiency Claim that would otherwise receive no payment. Therefore, Debtor requests the order of this Court approving the proposed classification of claims under the Plan.

---

[4]   Bank has filed motions for stay relief and to dismiss to pursue foreclosure. See Doc. nos.  39 and 30, respectively.

[5]   Debtor's motion to determine value of secured claims will establish amount of Bank Deficiency Claim. Doc. no. 19.

[6]   Code section 1126 provides  in relevant part: "(c) a class of claims has accepted a plan if such plan has been accepted by creditors. . . that hold  at least  two-thirds in amount. . . . that have accepted or rejected such plan."

C.      <u>Certificate of Service</u>.  I certify that a copy of Debtor's response to bank's separate classification memorandum has been provided on February 5, 2014: (i) to all "filing users" through the CM/ECF filing system.

/s/David R. McFarlin

David R. McFarlin
Florida Bar No. 328855
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Drive
Orlando, FL 32804
Telephone (407) 648-0058
Facsimile (407) 648-0681
dmcfarlin@whmh.com

Attorneys for Debtor

12